**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ORLANDO UTILITIES COMMISSION,**

        **Plaintiff,**

-vs-                      **Case No.  6:08-cv-1008-Orl-31KRS**

**CENTURY COAL, LLC,**

        **Defendant.**

_____

# ORDER

This matter came before the Court after a hearing on the motion for summary judgment (Doc. 34) filed by the Plaintiff, Orlando Utilities Commission ("OUC"), and the response filed by the Defendant, Century Coal, LLC ("Century").

**I.**    **Background**

OUC and Century entered into a three-year coal delivery contract.  Century agreed to provide OUC 120,000 tons of coal per year for 2008, 2009, and 2010 by way of monthly shipments beginning in January 2008.  OUC agreed to pay $45 per ton for the coal, with the price to increase by 2 percent approximately halfway through the term of the contract.  Century delivered the coal as agreed for the first two months of the contract.

In March 2008, Century began demanding that OUC increase the base price from $45 per ton to $80 per ton.  OUC refused, and Century stopped delivering coal.  On June 19, 2008, OUC filed the instant suit, alleging that Century had breached the contract and seeking damages (Count

I) and specific performance (Count II).  OUC eventually dropped the specific performance claim

and now seeks summary judgment on the damages claim.

## II.      Legal Standard

A party is entitled to summary judgment when the party can show that there is no genuine

issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the

substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark*

*v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a

dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving

party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to

interrogatories, and admissions on file, designate specific facts showing that there is a genuine

issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and

citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who

fails to make a showing sufficient to establish a genuine issue of fact for trial.  *Id.* at 322, 324-25.

The party opposing a motion for summary judgment must rely on more than conclusory statements

or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir.

1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most

favorable to the party opposing the motion, and resolve all reasonable doubts against the moving

party.  *Anderson*, 477 U.S. at 255.  The Court is not, however, required to accept all of the

-2-

non-movant's factual characterizations and legal arguments.  *Beal v. Paramount Pictures Corp.*,

20 F.3d 454, 458-59 (11th Cir 1994).

## III.    Application

In their papers and at the hearing on this matter, the parties have agreed that they entered

into a contract, that Century breached that contract by failing to make any coal deliveries since

February 2008, and that OUC has suffered damages as a result.  The parties have even agreed as to

the amount of damages resulting from the breach.[1]  In other words, all of the elements of OUC's

breach of contract claim have been established.

The only issue left to be resolved is whether Century possesses a defense that excuses its

breach.  Although it raised more than a dozen affirmative defenses in its answer, in response to the

motion for summary judgment Century has abandoned all but three: commercial impossibility,

commercial impracticability, and frustration of purpose.  However, the first defense is obviously

not applicable here, as Century neither argued that it is not possible for it to deliver the coal nor

provided any evidence that might support such a contention.  *See generally American Aviation,*

*Inc. v. Aero-Flight Service, Inc.*, 712 So. 2d 809, 810 (Fla. 4th DCA 1998) (holding that

impossibility of performance excuses breach except where knowledge of the facts making

performance impossible were available to the promisor).  To the contrary, Century has tried to

negotiate a better price for delivering its coal – showing that it was not unable to perform, just

unwilling.

---

[1]The parties stipulated that, pursuant to the contract, OUC suffered $24,068,662.03 in damages, plus $485,880.80 in prejudgment interest through October 9, 2008, for a total of $24,554,542.83, as well as $7,253.56 in prejudgment interest per day thereafter.  (Doc. 50 at 1).

So, too, for Century's "frustration of purpose" defense.  Under Florida law, the frustration of purpose defense applies "where one of the parties finds that the purposes for which [it] bargained, and which purposes were known to the other party, have been frustrated because of the failure of consideration, or impossibility of performance by the other party."  *Home Design Center – Joint Venture v. County Appliances of Naples, Inc.*, 563 So. 2d 767 (Fla. 2d DCA 1990).  There has been no evidence of a failure of consideration here, no evidence that OUC has not performed (or does not stand ready to perform) its part of the bargain by paying the agreed-upon price per ton, and no evidence of any particular purpose for which Century bargained that it is now unable to accomplish.

This leaves commercial impracticability.  Under Florida law, a seller is excused from performance "if performance as agreed has been made impracticable by the occurrence of a contingency the nonoccurence of which was a basic assumption on which the contract was made".  Fla. Stat. § 672.615.  The comments to this portion of the Florida Commercial Code explain that "[i]ncreased cost alone does not excuse performance unless the rise in cost is due to some unforeseen contingency which alters the essential nature of the performance.  Neither is a rise or a collapse in the market in itself a justification, for that is exactly the type of business risk which business contracts at fixed prices are intended to cover."

Century provides a laundry list of allegations and contentions in support of its impracticability defense.  According to Century, the coal market has undergone "historic changes" in recent months.  In an affidavit, Century's CFO, Eric McCrady ("McCrady"), stated that the market price for Central Appalachian coal – the type of coal Century was required to provide under the contract – increased from approximately $45 per ton in March 2007 to approximately

$140 per ton in June 2008.  During the same period, according to McCrady's affidavit, Century's cost of production rose to $71 per ton.[2]  According to McCrady, at that price, Century would have lost more than $9 million over the term of the contract with OUC, which would have forced it to file for bankruptcy protection.[3]

Although Century has provided *some* information in support of its impracticability defense, the bulk of what it has provided is not relevant.  Century goes on at some length about the factors that have allegedly caused the price of coal to increase from $45 per ton to $140 per ton, such as increased demand from China and floods affecting coal mines in Australia.  This may be true.  But so what?  Century is alleging that increased costs forced it to breach the contract.  But Century has utterly failed to produce any evidence that this $95-per-ton increase in the *price* of coal has increased its *cost* to perform the contract.

McCrady avers that Century's costs of production increased due to "price increases in fuel, steel, labor and permitting challenges."  He does not say how much these items increased in price during the relevant time period, or what impact, if any, such increased prices (or increased "permitting challenges") had on Century's cost of production.[4]  He does not explain how Century's costs of production are calculated.  He does not provide any information from which one could

---

[2]McCrady did not provide a figure for Century's cost of production at the beginning of the period.

[3]As Century's counsel noted at oral argument, Century has other long-term supply contracts which are contributing to its financial problems.

[4]At the hearing, Century's counsel suggested that, because coal is used in the production of steel, and because Century requires steel to produce coal, increased coal prices would therefore lead to increased costs for Century.  But Century has produced no evidence of increased steel prices, and Century has not shown what percentage steel comprises of its total costs.

determine whether increases in items other than "fuel, steel, labor and permitting challenges" – or a reduction in the amount of coal being produced – could account for this purported increase in Century's cost per ton.  McCrady does not even reveal Century's costs of production prior to June 2008, when it supposedly reached $71 per ton.  Based on this record, that figure could have been $70 per ton at the outset of this agreement.  In short, Century has failed to produce evidence from which a finder of fact could even determine that its costs have increased, much less that they increased based on "the occurrence of a contingency the nonoccurrence of which was a basic assumption on which the contract was made".  The Court finds that there is no genuine issue of material fact as to Century's defense of commercial impracticability, and OUC is therefore entitled to summary judgment.

Accordingly, it is hereby **ORDERED** that the motion for summary judgment (Doc. 34) is **GRANTED**.  The Clerk is directed to enter judgment in favor of Orlando Utilities Commission and against Century Coal, LLC in the amount of $24,583,557.10.[5]  The Court reserves jurisdiction to determine an award of attorney's fees.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 14, 2008.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[5]See note 1.